381 So.2d 923 (1980)
WESTERN CASUALTY & SURETY CO., Plaintiff-Appellant,
v.
Zane ADAMS et al., Defendant-Appellee.
No. 7481.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
*924 Stafford, Stewart & Potter, Russell L. Potter, Alexandria, for plaintiff-appellant.
Michael Henry, John G. Williams, Natchitoches, Watson, Murchison, Crews, Arthur & Corkern by William P. Crews, Jr., Natchitoches, for defendant-appellee.
Before CULPEPPER, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
This subrogation claim was brought by plaintiff, Western Casualty & Surety Company, to recover $23,775.81 paid to Mrs. Jewell Whitehead as a result of the destruction of her residence by fire. Defendants are Executive Realty, Inc., the general contractor that built Mrs. Whitehead's home, Zane Adams, the electrical subcontractor who wired it, and Square "D" Company, the manufacturer of a central heating unit that was installed in it. Plaintiff appeals a judgment of the district court in favor of defendants, dismissing its suit at its cost. We affirm.
In the fall of 1976 plaintiff's insured, Mrs. Jewell Whitehead, purchased a new home in Provencal, Louisiana from Executive Realty, Inc. On November 8, 1976, approximately four weeks after Mrs. Whitehead and her daughter, Mazel Whitehead, moved into the house, it was totally destroyed by fire.
Mrs. Whitehead and her daughter testified that from the time they moved into the house, many of its electrical appliances and fixtures malfunctioned. On numerous occasions, they noted small electrical sparks coming from wall-mounted switches when they were turned on. The doorbell would ring constantly without any one pressing the button. The electric heater in the bathroom ceiling did not work properly, and the central heating unit put out too much heat, even when the thermostat was at a low setting. They also testified that for several days prior to the fire, they heard unusual noises, which they described as "popping" sounds, similar to that produced by the breaking of a dry stick or twig. Mazel also reported seeking strange lights in the attic.
Plaintiff attempted to establish the cause of the fire through the deposition testimony of Mr. Jerry Gilmore, an expert fire investigator, who had examined the ruins of the Whitehead residence eight days after the fire. Mr. Gilmore was of the opinion that the fire was caused by some unknown defect in the central heating unit manufactured by Square "D" Company. His opinion was based on his findings that there had been electrical arcing in the wiring tray of the unit and that the interior of the unit had sustained more thermal damage than its exterior.
Mr. Gilmore could not explain the malfunctioning of the other electrical appliances and fixtures in the house. He found no evidence of faulty wiring or installation of the central heating unit or any of the other appliances or fixtures. Moreover, when he made his investigation and formulated his opinion as to the cause of the fire, he was not even aware of the numerous electrical problems that had been noted by the Whiteheads. He candidly admitted that other experts might have arrived at different opinions about the cause of the fire.
The only other expert who testified was Mr. Ronald C. Ferguson, an electrical engineer employed by Square "D" Company. In addition to testifying concerning Square "D" Company's quality control requirements and the Underwriter's Laboratory tests conducted on its central heating units, Mr. Ferguson explained that Mrs. Whitehead's complaints about the excessive heat produced by the unit stemmed from the fact that the unit was too big for her home. He had not inspected the house, however, and could not offer an opinion as to the cause of the fire.
*925 The trial judge noted in his written reasons for judgment that plaintiff had failed to prove any negligence on behalf of or on the part of the defendants. On appeal, plaintiff argues that the trial judge erred by applying the wrong law. It contends that it was not required to prove negligence directly, citing Weber v. Fidelity & Casualty Company of New York, 259 La. 599, 250 So.2d 754 (1971), wherein the court stated:
"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect." (Citations omitted)
We agree that plaintiff was not required to prove any specific act of negligence on the part of defendants. However, it was required to prove that a defective product manufactured by defendants caused its loss. In a products liability case plaintiff has the burden of proving causation by a preponderance of the evidence. Weber v. Fidelity & Surety Company of New York, supra; Hartford Fire Insurance Company v. Maytag Company, 374 So.2d 1269 (La.App. 3rd Cir.1979).
That burden of proof was explained by the court in Weber, supra, as follows:
"In this civil case, the plaintiff's burden is to prove causation by a preponderance of the evidence. This burden may be met either by direct or, as in this case, by circumstantial evidence. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963).
As we stated in the latter decision, 153 So.2d 397: `Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation.'" 250 So.2d at page 757.
After carefully reading all of the trial judge's written reasons for judgment, we believe that he applied that standard and correctly concluded that plaintiff had not borne its burden of proving causation. He noted that the various electrical problems observed by the Whiteheads had not been explained. We agree that the hypothesis that the fire was caused by an electrical malfunctioning, other than in the central heating unit, has not been reasonably excluded. On the other hand, there is no evidence of fault on the part of the builder or the electrician which resulted in such a malfunctioning. Plaintiff's own expert, after thoroughly examining the remains of the home, found no evidence of poor workmanship.
Plaintiff argues that the existence of a defect in the design and/or manufacture of the house or the central heating unit can be inferred by application of the doctrine of res ipsa loquitur. We disagree. The circumstances of this case are not such that in the absence of an explanation by defendants the only fair and reasonable conclusion is that the fire was caused by some omission of defendants' duty. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
For the above reasons, the judgment appealed is affirmed. All costs of this appeal are assessed to plaintiff.
AFFIRMED.